Argued November 29, affirmed December 28, 1915.

# EVANHOFF *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.*

(154 Pac. 106.)

**Injunction—Not the Proper Remedy to Test the Workmen's Compensation Act.**

1. The benefits to be derived under the Workmen's Compensation Act (Laws 1913, p. 188) will not be enjoined at the instance of an injured employee, on the ground that the State Industrial Accident Commission and the State Treasurer are depriving him of the right of a trial by jury, and are unlawfully attempting to dictate and determine the amount he shall recover, for the reason he could test the unconstitutionality of the act and the authority of the commission, by ignoring them and bringing his action either at common law or under the Employers' Liability Act.

> [As to constitutionality of Workmen's Compensation Act, see note in Ann. Cas. 1912B, 174.

**Injunction—Burden of Taxpayer by Payment of Salaries to Commission as Grounds.**

2. Plaintiff has shown but one reason why he should be allowed to bring this suit, and that is because he is a taxpayer; that by the unlawful expenditure of the money appropriated under the provisions of the act, his financial burdens might be increased.

**Master and Servant—Title of the Workmen's Compensation Act is Constitutional.**

3. The title to the Workmen's Compensation Act (Laws 1913, p. 188) is as follows: "An act creating the State Industrial Accident Commission and providing an Industrial Accident Fund, making an appropriation for such fund and providing for the administration of the terms of the act, providing for the collection and disbursement of funds for the benefit, compensation and care of workmen, prescribing the duties of employers and workmen subject to this act, and providing penalties for the violation of the terms of this act, and abolishing in certain cases the defenses of assumption of risk, contributory negligence and the negligence of a fellow-servant in actions for personal injury and death," does not violate that part of the state Constitution requiring every act to embrace but one subject, which shall be expressed in the title.

**Constitutional Law—Act Creating State Industrial Accident Commission is Constitutional.**

4. The act creating the State Industrial Accident Commission (Laws 1913, p. 188) is not in contravention of Article III, Section 1

---

*On the constitutionality of statute rendering the master liable for injury to servant irrespective of negligence, see note in 34 L. R. A. (N. S.) 162.

The constitutionality, application and effect of the Federal Employers' Liability Act is discussed in notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.                                        REPORTER.

of the state Constitution that provides as follows: "The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative,·and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another." *In re Willow Creek*, 74 Or. 592, 610, 611 (144 Pac. 505), approved and followed.

### Constitutional Law—Judicial Powers Conferred by Constitutional Provision.

5.   By force of the amendment to Article VII, Section 1, of the Constitution (Laws 1811, p. 7), the legislature was empowered and authorized to confer judicial powers upon the State Industrial Accident Commission under the workmen's compensation law,. for the reason under this amendment either the legislature or the people have the right to confer judicial powers upon any tribunal it or they may select, *provided*, the executive, legislative and judicial departments of the state government are not blended so as to contravene Article III, Section 1 of the Constitution.

### Constitutional Law—Right to Trial by Jury—Due Process of Law.

6.   The Workmen's Compensation Act (Laws 1913, p. 188), establishing a system of voluntary accident insurance and creating the State Industrial Accident Commission to carry into effect its provisions, does not violate either Article I, Section 10, of the state Constitution, providing "No court shall be secret, but justice shall be administered .openly   * * and without delay, and every man shall have remedy by due process of law for injury done him in his person, property or reputation," or Section 1 of the Fourteenth Amendment to the United States Constitution, declaring " * * nor shall any state deprive any person of life, liberty or property, without due process of law, * * " for the reason that the act does not attempt to establish a court to try causes without a jury, neither does it compel employers and employees to adjust their grievances without their consent, for the act allows the employer an election to either accept or reject its provisions, and in case he rejects the act, he is left the right to protect himself from personal injury actions in the courts.

### Master and Servant—Constitutionality of the Workmen's Compensation Act.

7.   The act under consideration (Laws 1913, p. 188) is not unconstitutional, because it requires the employee to elect at the time of his employment and prior to any injury whether or not he will come under the terms of the act, and further providing that in case he chooses to come under the terms of the act, he thereby waives the right to resort to the courts for redress, since the act proposes to both employers and employees a scheme for obtaining life and accident insurance in lieu of litigation, but is not compulsory on either, and this feature eliminates the objection that the act is unconstitutional.

### Statutes—Construction When Followed and Acquiesced in by the Legislature.

8.   The act creating the State Industrial Accident Commission, appointing three commissioners at a salary of $3,600 per annum, payable from a fund provided for by the act, is not in violation of Article IX, Section 7, of the Constitution, for the reason that the act is not an

appropriation bill in the sense that bills providing for general current expenses or salaries of the constitutional officers of the state are such. From the year 1860 to the present time, similar laws to the instant act have been passed and a uniform construction of this section of the Constitution in other states having identical or similar provisions in their constitutions, is that it will not prevent the legislature from passing an act for a particular purpose, and in the same act to provide and appropriate the necessary funds to carry the object of the act into effect.

### Constitutional Law—Construction as to Constitutionality of Statute.

9. The rule is well settled in this state that a statute will not be held unconstitutional where a reasonable doubt exists as to its invalidity. (Citing *In re Willow Creek*, 74 Or. 592 (144 Pac. 505), and other Oregon cases.)

### Statutes—Constitutional Provisions as to Reading Legislative Bills.

10. Under Article IV, Section 19, of the Constitution, requiring all bills to be read by sections on three several days in both the House and Senate, does not require the whole bill, as amended during its progress through the legislature, to be so read, and such has never been the practice in this state.

From Marion: WILLIAM GALLOWAY, Judge.

In Banc.    Statement by MR. JUSTICE McBRIDE.

This is a suit in equity by George Evanhoff against the State Industrial Accident Commission to enjoin the enforcement of Chapter 112, Laws of 1913, generally known as the Workmen's Compensation Act. In the complaint it is alleged that plaintiff is a subject of the king of Bulgaria, but is a resident freeholder and taxpayer of the State of Oregon. The complaint then alleges that he has a good cause of action against the Bridal Veil Lumber Company for damages for personal injuries sustained by him while in its employ, and sets forth in detail the facts constituting such cause of action with all the particularity which could be required in an action for damages against said corporation, averring that he has thereby been damaged in the sum of $15,000. It is further alleged:

"The State Industrial Accident Commission wrongfully professes to have power and authority to deprive plaintiff of his right of action or to a civil trial

in the said cause, and wrongfully professes to have
power and authority, and is threatening to and will,
unless restrained by this court, deprive this plaintiff
of his right of trial of said cause of action before a
jury or before any of the established Circuit Courts
of the State of Oregon, more especially before the Cir-
cuit Court of the State of Oregon otherwise having
jurisdiction thereof, and wrongfully professes to have
power and authority to determine the amount which
plaintiff shall receive in payment by reason of said
injuries, and to cause plaintiff to accept from said
State Industrial Accident Commission a sum which it
may see fit to award plaintiff in full and complete
discharge and satisfaction of all of his claims arising
from the matters herein alleged, and that the said
State Industrial Accident Commission bases its claim
upon and in virtue of an act, to wit, House Bill No.
27, entitled, 'An act creating the State Industrial Ac-
cident Commission and providing an industrial acci-
dent fund, making an appropriation for such fund
and providing for the administration of the terms of
this act, providing for the collection and disburse-
ment of funds for the benefit, compensation and care
of workmen, prescribing the duties of employers and
workmen subject to this act, and providing penalties
for a violation of the terms of this act, and abolishing
in certain cases the defenses of assumption of risk,
contributory negligence and the negligence of a fellow-
servant in actions for personal injury and death,' filed
in the office of the Secretary of State of the State of
Oregon, February 25, 1913, and acts amendatory
thereto and thereof. * * Thos. B. Kay, as State
Treasurer of the State of Oregon, wrongfully and
without right professes and claims to be empowered
by the said act to pay, and unless restrained by an
order of this court will pay, to each of the said com-
missioners constituting the State Industrial Accident
Commission the sum of $3,600 a year each as salary
for their acts as such, and will make such payments
out of a fund purported to be created by and referred
to in said act; and, further, the said State Treasurer

claims and asserts power and authority to pay, and unless restrained by order of this court will pay, out of such funds divers sums of money for all and every of the various purposes set forth in said act, and wrongfully and without right asserts power and authority to pay, and unless restrained by order of this court, will pay, out of said fund such sums of money as the commission above named may see fit to allow to various and numerous injured workingmen, and by such payment the said State Treasurer will divert large sums of money collected as taxes to the payment of the various sums designated in said act. * *

"The acts of the defendants State Industrial Accident Commission and Thos. B. Kay, State Treasurer of the State of Oregon, in enforcing the said legislative enactment known as and called the Workmen's Compensation Act of Oregon, are, and each of them is, wrongful and unlawful in this: That the said act (Sess. Laws Or. 1913, p. 188), filed in the office of the Secretary of State, February 25, 1913, commonly known as and called the Oregon Workmen's Compensation Act, is unconstitutional and void and conflicts with the provisions of the Constitution of the State of Oregon, as well as the Constitution of the United States in the following particulars, to wit: (1) It vests judicial powers and functions in an administrative and executive board, to wit, the Oregon Industrial Accident Commission, and thereby attempts to combine judicial and executive functions in violation of Section 1, Article III, of the Constitution of Oregon. (2) It arbitrarily fixes a limit on sums to be allowed for personal injuries, and thereby passes judgment by legislative enactment on the amount which any injured person falling within its purview may recover, and is violative of Section 1, Article III, of the Constitution of Oregon in that the legislature, by fixing such judgments, attempts to and did exercise judicial powers.   (3) It is not within the police powers of the state.   (4) It provides a system of awards based upon sociological reasons, and disregards the individual and personal right of an injured employee to recover for

such injuries, and thereby violates Section 10, Article I, and Section 17, Article I, of the Oregon Constitution. (5) It imposes taxes which are general throughout the state. Such act has not been ratified by the voters of the state at a general election, as provided in Section 1a, Article IX, of the Constitution of Oregon as amended by Laws of 1911, at page 9, and therefore is not in force. (6) It violates subdivision 3, Section 23, Article IV, in this: Section 32 of the said act attempts to provide and regulate a special practice in courts of justice. It further violates subdivision 10 of Section 23, Article IV, of the Constitution of the State of Oregon, in that it purports to and provides for the assessment and collection of taxes for state purposes, and is a special act on both the subjects herein specified. (7) It violates the Constitution of Oregon at Section 7 of Article IX, in this: It creates public offices and makes appropriations for the salaries of the officers therein designated and other current expenses of the state, and embraces subjects other than those relating to the salaries of such officers and the current expenses of the state. In addition to such subjects, it purports to and does embrace acts on the following subjects: (a) Creating the State Industrial Accident Commission; (b) providing an industrial accident fund; (c) making an appropriation for such fund; (d) providing for the administration of the terms of the act; (e) providing for the collection and disbursement of funds for the benefit, compensation and care of workmen; (f) prescribes the duties of employers and workmen subject to the act; (g) provides penalties for violations of the terms of the act; (h) abolishes certain defenses in certain cases; (i) attempts to regulate rights where injuries to a laboring man are caused by third persons; (j) provides a system of appeals and regulates practice thereon. (8) It vests judicial power in the State Industrial Accident Commission without providing for a jury trial before it, and attempts to make its decisions binding unless appealed from, and thereby deprives injured laborers of their right of jury trial in civil cases, and is viola-

tive of Section 17, Article I, Section 1a, Article I, and
Section 10, Article III, of the Constitution of Oregon.
(9) It provides for the determination of questions in-
volving the extent of injuries and the amount to be
recovered by injured workingmen, and vests the de-
termination of such questions in the said Oregon In-
dustrial Accident Commission, and does not require
notice to be given to the injured workingmen of the
time or place of hearing, nor require process to pro-
cure the attendance of witnesses, nor does it require
that a time and opportunity be given to such injured
workmen to be heard in respect to their rights, and
therein it does not provide due process of law to per-
sons falling within its purview, and is violative of
Section 10, Article I, of the Constitution of the State
of Oregon.   (10) It attempts to compel workmen to
make an election in advance of injuries received be-
tween the awards under the act and the constitutional
right to proceed in a civil jury case guaranteed by
Section 10, Article I, and Section 17, Article I, of the
Constitution of Oregon.   (11) At Sections 2 and 3 of
the Workmen's Compensation Act, it provides for the
appointment and removal of commissioners.   It does
not provide for their election and recall, and the said
act vests judicial power in said commissioners and is
violative of Section 18, Article II, of the Constitution
of Oregon.   (12) At Section 20 of said act it attempts
to make annual appropriations out of any moneys in
the state treasury not otherwise appropriated, and
makes such appropriations for a period of time ex-
tending beyond the life of the legislative assembly
which passed the act, and thereby violates Sections 1,
2 and 3, Article IX, of the Constitution of Oregon.
(13) It violates Sections 7, 8 and 9, Article XI, of the
Constitution of Oregon in this: That at Section 20 of
the said act an appropriation is made out of any
moneys in the general fund in the state treasury not
otherwise appropriated, and there is also appropriated
annually out of any moneys in the state treasury not
otherwise appropriated a sum equal to one seventh
of the total sum, which shall be received by the State

Treasurer under provisions of Section 19 of said act, and by such enactments the State of Oregon undertakes to and does assume to pay obligations and losses occasioned in the private business of persons, corporations and associations, and the state attempts to and does lend its credit to such private enterprises and corporations. (14) That the said act is violative of Section 20, Article IV, of the Constitution of Oregon in this: It embraces subjects not expressed in the title and not germane thereto. At Section 12 it attempts to regulate rights of an injured workman injured by a third person, and at the same section it purports to provide an exclusive remedy in lieu of all claims against an employer, and thereby prohibits one spouse from recovering for loss of consortium by injury to the other caused through the fault of the master. (15) That the said act is discriminatory as between laborers affected by its provisions in this: That it does not relate to laborers for the state, any counties or any municipalities within the state, who may be engaged in similar employments, as laborers working for private corporations, and it thereby denies to laborers for private persons, corporations, associations and enterprises the equal protection of the law, which laborers for the state, or any of the counties within the state, or any municipalities within the state, are guaranteed and retained.

"The said act is violative of the Constitution of the United States, and of the State of Oregon in the following particulars: (1) It violates Section 4, Article IV, of the Constitution of the United States in this: That it deprives injured workingmen within its purview of a republican form of government by vesting judicial and executive powers in the same officers. (2) It is violative of Amendment 7 and Amendment 14, Section 1, of the Constitution of the United States, and of Section 10, Article I, and Section 17, Article I, of the Constitution of Oregon, in that it deprives a workman, injured through the fault of his master, of the right to trial by jury, and also deprives such workman of the right to recover individually for the

individual wrongs committed against him, and denies
the right to recover a sum commensurate with the in-
juries sustained.   (3) It deprives injured workmen of
property without process of law in violation of Amend-
ment 14, Section 1, of the Constitution of the United
States in this: It does not require a trial before the
Oregon Industrial Accident Commission, nor does it
require notice of the time or place of hearing to be
given to such workmen, nor afford them an opportunity
to appear before such board in person or by counsel,
nor does it require the protection of witnesses before
such board for or against the claim of such injured
workmen, but it provides for a summary procedure
in determining the extent and character of injuries
suffered by such workmen, as well as determining
the amount to be recovered within the limits pre-
scribed, and limits the amount of recovery to sums not
purporting to be commensurate with the injuries sus-
tained.   (4) It denies to injured workmen the equal
protection of the law, and violates Amendment 14,
Section 1, of the Constitution of the United States in
this: That within the class of workmen affected by
its provisions, it awards equal sums for similar in-
juries to different workmen, regardless of the ques-
tion of fault, and thereby takes from a workman
injured through the fault of his master the sum which
he should recover, and gives to a workman suffering
like injuries an equal sum, although he is hurt through
his own fault; also it denies the equal protection of
the laws to workmen of the same class, grade and
kind who are working for private persons, corpora-
tions, firms or enterprises, and takes from them the
privileges of jury trial and immunity from the opera-
tion of said law which are accorded to laborers for the
State of Oregon, or any of the several counties with-
in the State of Oregon, or any municipalities within
the State of Oregon, in this: That laborers engaged
in like work for the State of Oregon, or any munici-
pality or county therein, as that in which laborers for
private corporations, associations, individuals or en-
terprises are engaged, are not embraced within its

terms; that in each particular specified herein wherein the said act violates the Constitution of the United States, it infringes upon the right of this plaintiff to recover for the injuries hereinbefore set forth."

The plaintiff declares that the act under which defendants claim authority was not properly passed, and several pages of the journals of the two houses of the legislature are pleaded, but are here omitted, the substance of the alleged informalities being that the original bill as introduced was amended in both houses in several particulars, and that the complete bill as finally amended was not read three times, as required by Section 19, Article IV, of the Constitution. There was a general demurrer to the complaint, which being sustained, the plaintiff appeals.    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Logan & Smith,* with an oral argument by *Mr. Isham N. Smith.*

For respondents there was a brief with oral arguments by *Mr. George M. Brown,* Attorney General, and *Mr. J. O. Bailey,* Assistant Attorney General.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1, 2. The complaint and the able and ingenious brief of counsel for plaintiff point out 19 alleged specific violations of the Constitution of this state, all committed within the compass of a single act, and then, piling Pelion on Ossa, specifies four alleged violations of the Constitution of the United States, perpetrated by means of the same statute. It would be, indeed, a reflection upon republican government if a bill which is so permeated with the rottenness of unconstitu-

tionality could pass both houses of the legislature with only three dissenting votes, and thereafter be indorsed by the people upon a referendum by a majority of more than two to one. It may be premised that, assuming every allegation as to the unconstitutionality of the act is well taken, plaintiff has shown but one reason why he should be permitted to bring this suit, and that is because he is a taxpayer of the state, and that by the unlawful expenditure of the moneys appropriated by the state under the provisions of the act in question his financial burdens as such will be increased: *State ex rel.* v. *Metschan,* 32 Or. 372 (46 Pac. 791, 53 Pac. 1071, 41 L. R. A. 692).

The allegations that the defendants threatened to deprive plaintiff of the right of trial by jury and wrongfully claim to have power to determine the amount that plaintiff shall recover, etc., have no force whatever. If plaintiff has a right to sue in the courts, there is manifestly no method whereby the defendants can prevent his so doing. If they have no right to determine his case for any reason, there is no law which compels him to present his claim to them or to abide their award if made against his remonstrance. He can test their authority by ignoring them and bringing his action either at common law or under the Employers' Liability Act as the fact may warrant. The sufficiency of the facts in relation to the injury to permit a recovery under either aspect, not being relevant to the matter in controversy, will not here be discussed.

3. Under the first point made in the brief are included several objections to the title of the act, which is as follows:

78 Or.—33

"An act creating the State Industrial Accident Commission and providing an Industrial Accident Fund, making an appropriation for such fund and providing for the administration of the terms of this act, providing for the collection and disbursement of funds for the benefit, compensation and care of workmen, prescribing the duties of employers and workmen subject to this act, and providing penalties for a violation of the terms of this act, and abolishing in certain cases the defenses of assumption of risk, contributory negligence and the negligence of a fellow-servant in actions for personal injury and death."

Concerning this objection counsel in their brief observe:

"It is plain that the act provides a system of jurisprudence for the administration of all questions relative to injuries received by workmen in the course of their employment, save those specified in the act itself. It also creates a board; a fund, and makes appropriations therefrom; provides: (a) For its administration; (b) the collection and disbursement of its funds; (c) the duties of employers and employees; (d) penalties for its violation; and (e) abolishes certain defenses in such cases."

In our view every matter referred to in the title is germane to the purpose of the act. Its object is to provide a system of actual voluntary insurance for injured workmen. As a necessary part of the system, a fund is to be raised whereof the employer shall contribute the larger part, the employee a small part, and the state a small portion. It would be absurd and wholly outside the intent of the Constitution to require that there should be one act to create the Commission and define its duties, another to prescribe the amount the employee should contribute, a third to fix the amount that the state should contribute,

and a fourth to appropriate the money thus defined to be the state's contribution. Such red-tape methods of accomplishing an object justified by the highest considerations of public policy and humanity were never contemplated by the framers of the Constitution.

"It is sufficient if the general subject of the act is contained in the title and is a fair index to the legislation proposed, and if all the provisions of the act are germane to such subject and do not relate to matters wholly foreign thereto": *In re Willow Creek,* 74 Or. 592, 615 (144 Pac. 505).

4. It is also urged in the objection now being considered, and elsewhere in the able brief of plaintiff, that the act in question attempts to confer judicial and legislative functions upon the Industrial Accident Commission, and is therefore in contravention of Section 1, Article III, of the Constitution, which is as follows:

"The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

This identical question is passed upon adversely to plaintiff's contention in *Re Willow Creek,* at pages 610, 611, of 74 Or., and that opinion and the authorities there cited are so conclusive as to render further discussion of the subject unnecessary.

5. Neither is it necessary to discuss the question as to whether the legislature had power to confer judicial functions upon the Commission. Section 9, Article VII, of the Constitution before amendment provided:

"All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent

therewith, exclusively in some other court, shall belong to the Circuit Courts; and they shall have appellate jurisdiction and supervisory control over the county courts, and all other inferior courts, officers, and tribunals.''

As originally adopted, Section 1, Article VII, of the Constitution reads as follows:

''The judicial power of the state shall be vested in a Supreme Court, Circuit Courts, and County Courts, which shall be courts of record, having general jurisdiction, to be defined, limited, and regulated by law, in accordance with this Constitution. Justices of the peace may also be invested with limited judicial powers, and municipal courts may be created to administer the regulations of incorporated towns and cities.''

In 1911 this section was amended so as to read:

''The judicial power of the state shall be vested in one Supreme Court and in such other courts as may from time to time be created by law. The judges of the Supreme and other courts shall be elected by the legal voters of the state or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law, which compensation shall not be diminished during the term for which they are elected'': Laws 1911, p. 7.

It would appear that the power of the legislature or of the people to confer judicial powers upon any tribunal which it or they may select is, by the force of this amendment, practically an unlimited one so long as the different functions of government, executive, legislative and judicial are not so blended as to contravene Section 1, Article III, of the Constitution, which, as shown in the case last cited, is not the case here.

6. It is next contended that the act is void in that it violates Section 10, Article I, of the Constitution of this state, which is as follows:

"No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

And that also it is in violation of Section 1 of the Fourteenth Amendment to the federal Constitution, as it deprives a person of property without due process of law. Neither of these positions is well taken. Plaintiff's argument proceeds upon the theory that the act establishing the Industrial Accident Commission attempts to establish a court for the trial of causes without a jury, which it does not, and to compel workmen and employers to adjust their grievances without their consent, which is contrary to the whole spirit and intent of the act. As before noted, the act leaves the employer free to accept the provisions of the act or to reject them as he may see fit. If he gives notice that he rejects them, he is left to protect himself from actions for personal injury by litigation in the courts. It is true that the act has swept away certain defenses heretofore available; but, as this could have been done in any case, he has no legal reason to complain. If he sees fit not to avail himself of the provisions of the act, he may still protect himself by giving notice that he rejects its provisions. It is not compulsory, and the arguments that apply with greater or less force to compulsory acts are here inapplicable. The state says to the employer and employee alike:

"We present to you a plan of accident insurance which you may accept or reject at your own pleasure.

If you accept, you must be bound by its terms and limitations; if you reject it, the courts are open to you with every constitutional remedy intact. Take your choice between our plan and such remedies as the statute gives you."

Discussing certain features of the Iowa Compensation Act, limiting the amount to be allowed for certain injuries, Mr. Justice McPHERSON, in the case of *Hawkins* v. *Bleakley* (D. C.), 220 Fed. 378, 381, says:

"The first twenty-two sections of this lengthy statute fix the liability of the employer and the rights of the employee. A scale of compensation is fixed and made certain. Each party can come within the statute or remain outside of the statute. Each party has his election. Many of the states for many years have had statutes fixing the liability with precision in cases of death, and in no instance has any court held such statute invalid. And why a statute cannot fix with certainty the damages to be allowed in case of the loss of an arm, leg, eye or other injury is not perceived, and counsel fail to state any legal or constitutional objection thereto."

7. It is further contended that the act is unconstitutional because it requires the employee to elect, at the time of his employment and in advance of all injuries, whether or not he will come under the terms of the act. Just what provision of the Constitution is violated we are not informed. It is a general principle that a person may, at any time, waive his right to bring an action upon a money demand unless there is a constitutional or statutory provision prohibiting it, or it is clearly against public policy to permit him to do so. So it has been often held that a contract whereby an employer attempts to stipulate against the consequences of his own negligence is void because contrary to public policy; but what is or is not public

policy is, in its last analysis, a legislative question, and we have yet to find an instance where a statute has been declared void because in the opinion of the court it would have been better policy to have left it unenacted. This view of the act disposes of many of the constitutional questions raised by counsel. The state proposes to employers and employees an accident and life insurance scheme, and offers it to them in lieu of litigation. It does not compel them to become participants in it or to contribute to it, but if they voluntarily choose to do so, they waive any other remedy, because the statute provides as a part of the scheme that they must do so; and, as before observed, by permission of the statute a party may waive or limit the *quantum* of his compensation for any possible prospective injury. The noncompulsory feature of the act may be said to eliminate most of the objections urged upon constitutional grounds.

8. One objection, however, which is urged with much plausibility, is that the act violates Section 7, Article IX, of the Constitution, which is as follows:

"Laws making appropriations for the salaries of public officers and other current expenses of the state shall contain provisions upon no other subject."

The evident purpose of this provision was to prevent matters foreign to the general purpose of appropriation bills being attached to them as riders, thereby taking advantage of the necessity of the state for money to defray its current expenses and to pay its officers to pass measures that perhaps would otherwise have been defeated. The instant act is not primarily an act to appropriate money to pay salaries or other current expenses. It is not an appropriation bill in the sense that bills providing for general current ex-

penses or salaries of the constitutional officers of the state are such. We have been cited to no case, in this state or elsewhere, where a provision similar to the one at bar has been construed in accordance with counsel's contention, and in this state contemporary legislative construction has been the other way. Thus, at the first regular session of the legislature held after the adoption of the Constitution, we find an act, entitled "An act for the appointment of a librarian and defining his duties" (Laws 1860, p. 64), was passed, creating the office of state librarian, defining his duties, prescribing the hours during which he should keep the library open, and appropriating $400 annually for the purchase of books and $150 annually for his salary. The president of the Senate, the Speaker of the House, and many members of both houses had been members of the constitutional convention. From that time to the present it is safe to say that there has not been a session of the legislature where similar acts have not been passed. Some of them are: The Food and Dairy Commission Act; the Immigration Commission Act, passed in 1885; the Fish Commission Act, in 1887; the State Board of Horticulture Act, in 1895; the Bureau of Labor Statistics Act, in 1903; the act creating the office of State Engineer, and providing a water code, in 1905; the Bank Examiner Act, the Railroad Commission Act, and the Sheep Inspector Act, in 1907; the act creating the office of insurance commissioner and a fund known as the "insurance fund," and the act creating our present water board, in 1909; the act creating the state forestry board, and the act providing for the construction of a branch insane asylum in Eastern Oregon, in 1911; the act providing for a state industrial school for girls; an act creating an Industrial Welfare Commission; an

act creating the state highway commission; and an act creating the state livestock sanitary board, in 1913. Most of these acts fixed the salary or compensation of the officers designated to carry out their purposes and appropriated the money necessary to pay such salaries and to accomplish the general objects for which the law was enacted. An examination of the late session laws of other states having identical or similar provisions in their Constitutions shows that the same legislative practice has been pursued in these jurisdictions, so that it may be said practically the uniform contemporaneous construction of this section of the Constitution is that it does not prohibit the legislature from passing an act designed to effect a particular purpose and in the same act to provide the funds necessary to accomplish that purpose. While such a construction will not be permitted to overturn and render nugatory a clear provision of the Constitution, in cases where the meaning of a clause in the instrument is capable of two interpretations, it is entitled to great weight. It was remarked by Judge COOLEY:

"But where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist. Indeed, where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the Constitution, and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention. And where this has been given by officers in the discharge of their official duty, and rights have accrued in reliance upon it, which would be divested by a decision

that the construction was erroneous, the argument *ab inconvenienti* is sometimes allowed to have very great weight": Cooley, Const. Lim. (7 ed.), p. 102.

9. All the considerations suggested by the learned jurist exist here. We sum up the situation: (1) The construction to be placed upon the clause in question is not clear; (2) the construction above indicated has been followed and acquiesced in by the legislature and the people from the adoption of the Constitution until the present time; (3) that construction was adopted by legislators who had participated in the framing of the Constitution and who may fairly be presumed to have known the intent with which it was adopted; (4) to now hold that the acts so passed are void would be attended with such disorganization of public business and destruction of private and pecuniary rights which have grown up with faith in the validity of the acts which would be affected by a decision favorable to the contention of plaintiff as would create widespread confusion and disaster. Our Irrigation Code, Minimum Wage Act, Public Utilities Act, and much of the legislation heretofore alluded to would be thrown into hopeless disarray. Under the act now being considered widows, orphans and helpless cripples who have taken advantage of its provisions would be deprived, in many instances, of their means of subsistence, and be thrown upon the cold charities of the world. These consequences are too momentous to be invoked by a new construction of a doubtful provision of the Constitution. The rule is well settled that a statute will not be held unconstitutional where a reasonable doubt exists as to its invalidity: *Cline* v. *Greenwood,* 10 Or. 230; *Simon* v. *Northup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 171); *State* v. *Cochran,* 55 Or. 157, 180 (104 Pac. 419, 105

Pac. 884); *Libby* v. *Olcott,* 66 Or. 124 (134 Pac. 13);
*In re Willow Creek,* 74 Or. 592, 615 (144 Pac. 505·).

10. It is further urged that the act is unconstitu-
tional because the original bill ·was amended in many
particulars during its progress through the. legisla-
ture, and the whole bill as amended was not read by
sections on three several days, as required by Section
19, Article IV, of the Constitution.   Such has never
been the practice in this state, and what little authority
can be found on the subject is contrary to plaintiff's
contention: *People ex rel.* v. *Wallace,* 70 Ill. 680.   In
that case the court· says:

"It is also objected that the tenth section of the
act was not constitutionally adopted, because it was
ingrafted as an amendment whilst the bill was being
considered, and was not read on three several days
in the house adopting it as an amendment.   We are
clearly of opinion that the requirement does not apply
to an amendment, and the objection cannot prevail."

Other objections are urged, but they are simply
variations of those already considered.   Upon the
whole case we are of the opinion that the act violates
no prescription of the Constitution of this state or of
the United States, and that it was properly passed and
is in every respect a valid law.   While experience
may suggest from time to time changes and amend-
ments, they are in line with twentieth century pro-
gress.   Before its enactment one workman out of three
received a large compensation for his injuries by an
action at law, while the remaining two were defeated
and got nothing.   Now every workman accepting its
provisions receives some compensation if injured; and,
taken as a whole, it will be found that more money in
the way of compensation is received by the whole body
of injured workmen than by the inadequate remedies

afforded in the courts. It has been a boon to the employers, the employed, and the community, which latter could formerly only offer to the injured laborer the charity of the almshouse instead of that just compensation which he may now receive without the humiliation of pauperism or the loss of self-respect.

The decree of the Circuit Court is affirmed.

                                        AFFIRMED.

MR. JUSTICE EAKIN took no part in the consideration of this case.

MR. JUSTICE BURNETT delivered the following dissenting opinion.

I cannot agree that continued violations shall be dignified into contemporaneous construction of so plain a mandate as Section 7, Article IX, of the state Constitution that:

"Laws making appropriations for the salaries of public officers and other current expenses of the state shall contain provisions on no other subject."

I concur in the result of the opinion of Mr. Justice McBRIDE, however, for the reason that, with the whole question before them on the referendum of the act in question, the people approved it at the election of November, 1913, by a vote of 67,814 to 28,608.