Argued and submitted October 20, motion to dismiss denied;
affirmed December 17, 1986

In the Matter of the Petition of
The Board of Directors of the Tri-County
Metropolitan Transportation District of Oregon.

DRUMMOND et al,
*Appellants,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION et al,
*Respondents,*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
*Appellant.*

(A8510-06192; CA A38328)

730 P2d 582

Margaret H. Leek Leiberan, Portland, argued the cause for appellants. With her on the briefs was Kell, Alterman & Runstein, Portland.

John DiLorenzo, Jr., Portland, argued the cause for respondent Columbia River Towboat Association. With him on the brief was Moshofsky, Dilorenzo & Dietz, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Oregon Department of Transportation and Division of State Lands.

No appearance for respondent Port of Portland.

No appearance for respondent Time Oil Company.

No appearance for Western Oil & Gas Association.

No appearance for respondents Oregon-Columbia Association General Contractors of America, Inc., C-3 Builders, Inc., and Kenneth G. Bakke.

No appearance for respondent Oregon Trucking Association.

No appearance for respondent Oregon State Homeowner's Association.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This appeal concerns a proposed tax on petroleum products adopted by the Board of Directors of the Tri-County Metropolitan Transportation District of Oregon (Tri-Met). Tri-Met appeals the trial court ruling that the tax is invalid because Tri-Met had failed to comply with a state statute that requires proposed ordinances to be read twice before being adopted. We affirm.

On August 26, 1985, the Tri-Met Board of Directors held a first reading of proposed Ordinance No. 127. The ordinance levied a tax of one percent on certain petroleum products sold within the district. "Petroleum" was defined as:

> "[M]iddle distillate fuel oils, motor gasoline, and liquefied petroleum gas which product groups include kerosene, Numbers 1 and 2 diesel fuel, Numbers 1 and 2 heating oil, aviation gas, aviation fuel, gasoline, propane, butane, and any other product not here listed for which any of the products listed cumulatively constitute at least 51% of its composition. The term 'petroleum' excludes all other petroleum products."

On September 30, 1985, the board amended proposed Ordinance No. 127 to exclude sales of petroleum within the tri-county area that were for delivery outside the tri-county area. The definition of "petroleum" was also changed to read:

> "[C]rude oil, plant condensate, gasoline, aviation fuel, kerosene, diesel motor fuel, benzol, fuel oil, residual oil, and liquefiable gases such as butane, ethane or propane. 'Petroleum' also means any product not here listed if used as or blended with a product listed."

Although the amendments did not affect significantly the total amount of money that would be raised, they expanded the definition of petroleum to include additional petroleum products: numbers 4, 5, and 6 fuel oil and residual fuel, which are used for powering ships, making asphalt and manufacturing some plastics and other synthetic materials.[1] The tax on the newly added products was expected to account for approximately 11 percent of the $10,200,000 to $10,500,000 sought to be raised by the ordinance, or about $1,100,000. The

---

[1] Although Tri-Met questions whether the amended ordinance added additional petroleum products that would be subject to the tax, the trial court found that it did, and there is substantial evidence to support the finding.

amended ordinance would not raise more money overall, because sales within the district for export to the rest of the state were to be excluded.

■   Respondents moved to dismiss this appeal, contending that the issue is moot. The motion was denied before briefs were filed, with leave to renew. They have renewed it, arguing that, because Tri-Met adopted a budget in May, 1986, (after the trial court decision in this case) that does not contain revenue from the proposed petroleum tax, Tri-Met has abandoned the ordinance and is pursuing this appeal for an advisory opinion only. If that were the case, the motion would be well taken, because there would be no concrete dispute to decide. *State ex rel Oregonian Publishing Co. v. Sams,* 298 Or 329, 332, 692 P2d 116 (1984). However, Tri-Met's choice to proceed with a budget that does not rely on revenue from the petroleum tax does not mean that it has abandoned the taxing ordinance. After the trial court ruled that the ordinance was invalid, Tri-Met could not impose the tax unless and until that decision was reversed. In the meantime, it had to operate within its resources. If the tax were held to be valid, Tri-Met could then impose it and revamp its budget to provide for the increased revenue. There is a concrete dispute, the issue is not moot and the motion to dismiss is denied.

Because questions were raised concerning the propriety of the procedure followed in enacting the ordinance, Tri-Met filed a petition to have the issue reviewed pursuant to ORS 33.710.[2] The trial court held that the ordinance was invalid, basing its ruling on ORS 198.550:

"(1)   Except as provided by subsection (3) of this section, before an ordinance is adopted it shall be read during regular meetings of the district board on two different days at least six days apart. The reading of an ordinance shall be full and distinct unless at the meeting:

---

[2] ORS 33.710(2)(c) provides:

"(2) The governing body may commence a proceeding in the circuit court of the county in which the municipal corporation or the greater part thereof is located, for the purpose of having a judicial examination and judgment of the court as to the regularity and legality of:

"* * * * *

"(c) Any order of the governing body levying a tax."

"(a)   A copy of the ordinance is available for each person who desires a copy; and

"(b)   The board directs that the reading be by title only.

"(2)   Except as provided by subsection (3) of this section, the affirmative vote of a majority of the members of the district board is required to adopt an ordinance.

"(3)   An ordinance to meet an emergency may be introduced, read once and put on its final passage at a regular or special board meeting, without being described in a published agenda, if the reasons requiring immediate action are described in the ordinance. The unanimous approval of all members of the board at the meeting, a quorum being present, is required to adopt an emergency ordinance."

Compliance with the statute is mandatory. ORS 198.530.

The statute requires that a proposed ordinance be read twice during regular meetings at least six days apart, unless the board declares an emergency. Ordinance No. 127 does not contain an emergency clause. Respondents argue that the amendments changed the ordinance to such an extent as to require two readings of the amended ordinance. Tri-Met claims that the amendments were insubstantial, affecting no new taxpayers and raising no more revenue.

There are no cases construing ORS 198.550. A literal reading of the statute would seem to require that the particular ordinance that is adopted be read twice before its passage. That interpretation would require two readings of an amended ordinance, even if the amendment involved simple editorial changes. We will not apply the literal words of a statute, if doing so leads to an unreasonable result, *Satterfield v. Satterfield,* 292 Or 780, 782-83, 643 P2d 336 (1982), and we do not do so here.

On the other hand, the obvious purpose of ORS 198.550 is to require public notice and to allow public comment regarding proposed ordinances. Tri-Met would have us analogize its board meetings to those of the legislative assembly. However, unlike the legislative assembly, public participation here is before the board, not a legislative committee considering proposed legislation. Therefore, its argument that Article IV, section 19, of the Oregon Constitution, which requires that every bill be read by title only on three separate days in each house, should be applied by analogy is not

persuasive, even though it has been held that amendments to a bill in the legislature need not be read three times. *Evanhoff v. State Industrial Acc. Com.,* 78 Or 503, 154 P 106 (1915). Public participation does not take place on the floor of the legislature. If a Tri-Met ordinance is changed substantially and then read and adopted at one meeting, the public and other interested parties might not have an opportunity to comment on the revisions that may affect them. If the original ordinance did not affect them, they might have no reason to attend either meeting.[3] Accordingly, if a substantial change is made in a proposed ordinance, we hold that ORS 198.550(1) requires that the revised ordinance be "read" twice during regular meetings of the board on two different days at least six days apart, the first of which may be the meeting at which it is amended.

The question remains whether Tri-Met Ordinance No. 127 as adopted was substantially changed by the amendment in question. The trial court held that the amended ordinance "substantially and materially expanded the scope of petroleum products to be included within the ambit of the ordinance." We agree with that holding.

■ The amended ordinance subjected things to the tax that were not covered in the ordinance as introduced. Although it may be true that the tax would be paid by the same businesses under both versions of the ordinance, the *effect* of the amended ordinance is not identical. Different types of businesses are affected by the amended ordinance, and the imposition of the tax on their products might affect their interest in participating in the legislative process. Because the amendment made a substantial change in the ordinance, ORS 198.550(1) required two readings of the amended version. The ordinance was not adopted in compliance with ORS 198.550; therefore, it is invalid.

Motion to dismiss denied; affirmed.

---

[3] An affidavit was filed in the trial court by George Morton, vice president of an asphalt paving contractor and a board member of the Asphalt Pavers Association of Oregon. He stated that he was unaware that the new tax would apply to oil used in asphalt paving until after the ordinance was adopted and stated that, if he had known about the amendment, he would have sought to make an appearance on behalf of his company and would have advised the board of the association to have its staff prepare testimony to present to the Tri-Met board.