[Filed February 25, 1886.]

M. J. COHEN ET AL. *v.* S. OTTENHEIMER AND S. A. HEILNER.

DEFECT OF PARTIES—DEMURRER—PLEADING AND PRACTICE.—When it appears upon the face of the complaint that the presence of other parties is necessary to a complete determination of the controversy, a demurrer will lie for a defect of parties plaintiff or defendant.

SAME.—Where too many parties are brought in, a demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action, in favor of or against the improper parties, would be the proper remedy.

SAME—MISJOINDER OF ACTIONS—"MULTIFARIOUSNESS."—"Multifariousness" is a term unknown to the code, but when alleged as a cause of demurrer may be taken to mean that several causes of action have been improperly united.

SAME—MOTION TO STRIKE OUT DEMURRER.—A demurrer cannot be stricken out on motion.

SAME—JUDGMENT ON DEMURRER—ELECTION.—When a demurrer to a complaint is sustained on the ground that several causes of action have been improperly united, the complaint is thereby completely overthrown, and the plaintiff can proceed only by filing an amended complaint containing the cause of action which he elects to pursue.

Baker County. Defendants appeal. Reversed.

*Haines & Williams*, and *Ramsey & Bingham*, for Appellants.

*Steeves & Mendenhall*, for Respondents.

Thayer, J. The respondents commenced a suit in the court below to foreclose a mortgage executed to them by Charles and Sarah F. Littlefield upon certain lots of land in Baker City, in the county of Baker. The mortgage bears date May 19, 1883, and was given to secure the payment of a promissory note executed by the mortgagors to the mortgagees for the sum of $1,625, bearing even date with the mortgage, and payable 12 months thereafter, with 10 per cent interest. Said Charles Littlefield and Sarah F. Littlefield are husband and wife, and were such when said note and mortgage were executed, and had been for a long time prior thereto. They were made defendants in the suit, and the appellants, Ottenheimer & Heilner, who are partners in business, were joined with them as defendants. The respondents set out in their complaint, after alleging a cause of suit against the makers of the note and mortgage, and that said Ottenheimer & Heilner claimed some interest in the mortgaged premises as judgment creditors subsequent and subject to the respondents' mortgage, the following : " And the plaintiffs herein, in order to protect and hold their security upon said mortgaged property, and that the plaintiffs may realize the full amount of their debt out of said property, the plaintiffs demand the relief hereinafter specified, which application is based upon the following facts ; " and then proceeded to show upon what Ottenheimer & Heilner based their claim ; viz. : That on the fifth day of January, 1880, the Littlefields conveyed by deed the said lots to one Shaw, and

that on the sixth day of January, 1880, Shaw and his wife, by deed, conveyed them to Mrs. Littlefield; that the deeds were in due form and duly recorded, and that as a matter of record the fee-simple title was in Mrs. Littlefield at the time she and her husband executed to the respondents the said note and mortgage; that on the first day of September, 1883, said Ottenheimer & Heilner commenced a suit in equity against the Littlefields and Shaws, charging that said deeds of the 5th and 6th of January, 1880, were executed to defraud creditors, and were void, and demanded that they be so declared as to them, and that said Littlefields be enjoined from transferring or selling the property, and that a certain patent from the United States to the said Charles Littlefield be placed upon record, and that the property be subjected to their judgment they had obtained for the sum of $628, and costs, against the said Charles Littlefield on the seventh day of November, 1881, in the said circuit court long prior to the said deeds; that thereafter the said circuit court, by its decree, granted the relief claimed in the said complaint; that the respondents extended credit to Mrs. Littlefield upon the honest belief of her solvency and ability to maintain such credit from the fact that she was in possession of said property claiming to be the owner thereof, and the records of the county showing that she was such owner in her own right, and that they had no knowledge or notice of any fraudulent conveyance thereof alleged in the said complaint; that they were *bona fide* mortgagees of the property for said sum of $1,625, and the interest thereon; that the said Ottenheimer & Heilner threaten and are about to issue execution upon said judgment, and apply the property upon the same by sale thereof to satisfy said judgment; that said decree was recovered on or about the fifteenth day of May, 1884, and that it constitutes a cloud upon the

title of said property, and greatly depreciates its value as a security to the respondents for the payment of said note ; that the issuance of said execution and levy upon the property will greatly depreciate its value, be a fraud' upon the respondents' right under the mortgage, and entail a multiplicity. of suits to remove a cloud on the title so far as their interests therein are concerned ; that the property is a scanty security for the payment of the mortgage debt, interest, and costs, and said mortgagor is unable to pay the debt; that said Ottenheimer & Heilner are charged by the records with notice of the mortgagees' prior right under the mortgage, and their threatened intent to issue the execution is to injure and defraud the respondents ; and concluded with a prayer for a judgment against the mortgagor Mrs. Littlefield, and for the usual decree of foreclosure of the mortgage ; also for an injunction against Ottenheimer & Heilner,. restraining them from issuing such execution or encumbering the mortgaged property by levy, sale, or possession.

I have only attempted to set out the substance of the extra matter inserted in the complaint in order to obtain the special relief therein prayed, but have shown enough of it to show its character. It is very apparent to my mind that it is wholly surplusage. It was unfortunate that the respondents' attorney in draughting the complaint conceived the idea that it would be necessary to insert such matter in the pleading, and why he did' so I am unable to understand. It could serve no earthly benefit, in any view, and he took upon himself the risk. of occasioning a jumble in the proceedings, and succeeded most admirably. It is not astonishing that such was the result. He lugged into the case an issue wholly unnecessary to the relief sought, and it could not very well fail to create confusion and entanglement. This

would have been to a great extent avoided if the appellants' attorneys had adopted the proper remedy and the circuit court had acted promptly. But one blunder is often the parent of another, as the sequence herein proves. The appellants' attorney, when he encountered this anomalous complaint, instead of moving the court to strike out the redundant part, filed a demurrer to the whole of it, specifying five distinct grounds, some of them entirely untenable and others farcical.

The first ground was that there was a defect of parties, in that, to wit, the defendants Ottenheimer & Heilner were joined as parties with the Littlefields. The literal import of that must be that there were too few parties because there were too many—a remarkable proposition of logic. The non-joinder of parties as plaintiff or defendant never meant the misjoinder, and the latter is not a cause of demurrer under our Code. When it is shown upon the face of the complaint that the presence of other parties not brought in is necessary to a complete determination of the controversy, a demurrer will lie for a defect of parties plaintiff or defendant, but not when there are already too many brought in. The only consequence attending the latter case is that a cause of action must be shown in favor of all the plaintiffs and against all the defendants that have been joined as such; otherwise the defendant might demur, but not for a defect or misjoinder—it would be upon the ground that the facts did not state a cause of action.

The second ground of the demurrer was that the complaint was "multifarious." I suppose the pleader meant by this that several causes of suit had been improperly united, and why he could not have said so, and have pointed out the several causes of suit so united, is strange. The term "multifariousness" has not been used in our Code of Procedure for nearly twenty-five

years, and for nearly forty years in the state from which
the system was taken.  There could have been no ad-
vantage gained by employing an obsolete term in plead-
ings.  It is much better in such cases to use the words
of the Code, although the ancient term, by legal con-
struction, may substantially mean the same thing.

The third ground, that the complaint did not state
facts sufficient to constitute a cause of suit against Otten-
heimer & Heilner ; the fourth, that the court had no
jurisdiction of the subject of the suit; and the fifth, that
the complaint did not state facts sufficient to constitute
a cause of suit—were proper in form, but wholly un-
tenable.

After the demurrer was filed, the respondents' attor-
ney, instead of bringing it on for hearing, which is the
only mode under the Code of having it disposed of, filed
a motion to strike out parts of it.  This was sheer ab-
surdity.  Circuit courts should promptly rebuke so fla-
grant an irregularity.  It seems from the record that
the motion was disregarded in this instance, but by con-
sent of parties " respectively."  If countenance is given
to such anomalies, we will soon have no system what-
ever in our practice—it will become a mere jumble.  It
further appears from the record that the demurrer was
heard by the court, and " after being fully advised in
the premises," the court found that the objection to the
complaint for " multifariousness " was well taken, and
that upon said objection said demurrer should be sus-
tained ; and it was thereupon ordered that the demurrer
be sustained, and that the plaintiffs in the suit have
leave to amend their complaint.  Further on in the rec-
ord it will be discovered that upon a subsequent day
(the first day of November, 1884) the respondents' attor-
neys filed another motion—a motion to so amend the
journal entry respecting the demurrer "as that the same

distinctly specify the parts of the complaint adjudged
by the court to be 'multifarious,' and as to what part of
the complaint the demurrer was overruled." This mo-
tion was entirely gratuitous and groundless. When the
demurrer was sustained in consequence of the complaint
being multifarious, or more appropriately, because it
contained distinct causes of suit improperly united, the
complaint was overthrown. The court could not pick
out the part that was mulifarious and that which was
not. It was either all multifarious or none of it was.
The objection upon such grounds is not that the several
causes of suit so united are severally insufficient. Each
may contain a good cause of suit and be well pleaded,
yet could not properly be united in the same suit. To
illustrate: If a party should unite in a complaint a cause
of suit to quiet his title to certain real property, and a
cause of suit to compel the specific performance of a
contract to convey to him other real property, his com-
plaint could be demurred out, although the facts pleaded
were amply sufficient to sustain the suits, if severally
brought. The only course to pursue in such a case is
to permit the party to elect which of the two he will
proceed upon in the suit commenced. The sustaining
of the demurrer was a determination that the suit must
stop, and the only way to continue its prosecution was
by filing an amended complaint, leaving out one of the
causes of suit contained in the original complaint, un-
less the court adopted the course I have known able
courts to pursue, which has been to consider the demur-
rer as a motion to strike out where the remedy should
have been by motion in the outset. But I think, then,
it would be better to allow the demurrer to be with-
drawn and the motion substituted in its place. But the
circuit court in this case followed another course. It
heard and granted the motion to correct the journal

entry. It concluded that the former entry upon the subject was "indefinite, and did not state fully the judgment of the court upon said demurrer," and caused the following entry to be made:

"Therefore said journal entry and judgment upon said demurrer aforesaid is hereby amended to read as follows: That there be and is hereby sustained all portions of the complaint in this cause consisting of exhibit A, the title of the cause, and the following allegations contained therein, to wit."

Then follows a form of the complaint similar to the original, after leaving out the facts relating to the special or auxiliary relief therein sought, but which contained record copies of said deeds to Shaw, and from Shaw and wife to Mrs. Littlefield, of January 5 and 6, 1880, which must have made twelve or fourteen pages of solid journal entry. It is hard to understand what this performance was intended for. It to my mind was a very awkward and unwieldly affair, and extrajudicial. But it appears that subsequently, and on the seventh day of November, 1884, the said circuit court proceeded to adjudicate upon the affair, as appears from a journal entry of that date, which recites " that the cause came on to be heard, the plaintiffs appearing by their attorneys, and the defendants Ottenheimer & Heilner having heretofore appeared herein by demurrer to the complaint, etc., and the judgment upon the demurrer having been duly entered, whereby a portion of the complaint was adjudged ill, and was stricken out, and the remaining portion adjudged good and sufficient, and said demurrer thereto overruled and denied, and the said defendants Ottenheimer & Heilner having failed to make any further or other defense herein, and not having asked further time in which to make such other or further defense, it appears that the plaintiffs are entitled to the relief

prayed for," etc.   Then follows a decree foreclosing the mortgage, and barring the said Ottenheimer & Heilner of all right, etc., in the premises, which is the decree appealed from herein.   The case does not appear to be here for a trial upon the merits, but to obtain a reversal of the decree for having been improperly entered, and I see no other course than that it will have to go back, and the appellants have an opportunity to defend against the claim of priority of the respondents' mortgage over their judgment.   It all occurs from a neglect to follow the plain provisions of the Code of Practice.   If the respondents' attorneys had drawn a simple complaint containing the facts of the execution of the note and mortgage, and allegation that Ottenheimer & Heilner had or claimed an interest in the mortgaged premises, but that it was created subsequent to the execution of the mortgage and subject to the lien thereof, and demanded a decree against the makers of the note, and a sale of the property to satisfy it, the whole matter could have been adjudicated.   Ottenheimer & Heilner would have been compelled to come forward and present what claims they had, and any facts alleged in regard thereto which the respondents controverted could have been denied or avoided by a reply.

Again, if there had been no attempt to patch up the first journal entry, but the respondents had filed and served a copy of an amended complaint, as the Code requires when a demurrer is sustained and the plaintiffs plead over, the case would have proceeded with reasonable regularity ; but that second journal entry was outlandish.   The journals of a court should never be encumbered in that way; besides, it amounted to nothing.   Making an entry of the part of the complaint that the court "adjudged good and sufficient" was a work of supererogation.   It could not dispense with the

necessity of afterwards writing out the complaint, signing and having it verified and placed among the files of the case. Otherwise, as suggested by the appellants' counsel upon the argument of the appeal, how could a judgment roll be made up? or how could the appellants be called upon to answer a journal entry? The appellants could not be adjudged in default until a copy of the amended complaint had been served as provided by section 68 of the Code, and the time for answering it prescribed by the court had expired. These rules of practice must be observed or the course of procedure in the prosecution of lawsuits will become chaotic. We have a Code which prescribes the mode to be pursued in such matters, and while legislative sanction gives it all the authority it possesses, yet it is something beyond a mere statute. It is a system devised and perfected by learned and able lawyers inspired by the principles of common-law practice and proceedings, with which they were familiar, and upon which they laid its foundation. Because it is plain, simple, and common affords no excuse to practitioners for being ignorant of its requirements, nor relieves them from the necessity of observing those regulations which wisdom and experience dictate as the best mode to be pursued.

The decree must be reversed; the case remanded to the circuit court, with leave to the respondents to file an amended complaint; that a copy thereof duly certified be served upon the appellants' attorneys, and that the appellants be required to answer the complaint within such time as the circuit court may prescribe; that the appellants recover costs on the appeal, and that the respondents pay the fees for the entry of the said decree, and for making said second journal entry; that the other costs and disbursements abide the final result of the suit.