Argued December 3, 1940; modified April 8, 1941

HALEY ET AL. *v.* SPRAGUE ET AL.

(111 P. (2d) 1031)

Before KELLY, Chief Justice, and RAND, LUSK and ROSSMAN, Associate Justices.

*Francis T. Wade*, Assistant Attorney General (I. H. Van Winkle, Attorney General, John A. Beckwith,

of Portland, and Sanderson Reed, of Salem, on the brief), for appellant.

*Ben H. Conn*, of Portland (H. A. Robertson, of Portland, on the brief), for respondents.

ROSSMAN, J. This is an appeal by the defendants, who constitute the state land board, from a judgment of the circuit court in favor of the plaintiffs, entered after the defendants' demurrer to the complaint had been overruled and the defendants had declined to plead further. The demands made by the complaint are thus stated in its prayer:

" * * * plaintiffs-petitioners pray for an order of this court adjudging them to be heirs at law and next of kin of said James Haley, deceased, and that as such heirs at law and next of kin they are entitled to receive their respective portions of the sum of $3,591.85, now in the hands of the state treasurer * * * ."

James Haley, according to the complaint, was a resident of Multnomah county at the time of his death, November 28, 1933. Administration upon his estate was directed by the probate department of the circuit court of that county. At the conclusion of the administration the administrator petitioned the court for an order that the estate be deemed an escheat. The requested order was made and on June 26, 1935, the administrator paid over to the state treasurer $3,591.85. Further, according to the complaint, none of the plaintiffs was a party or privy to that proceeding, and none of them had any knowledge concerning it. The complaint states:

"The plaintiffs, Owen Haley, Nellie Haley Hall, Allen Haley, Fred Haley, Blanch Haley Cravor, Charles Cross, Mary Cross Conlon and Katherine Cross are heirs at law and next of kin of said James Haley, de-

ceased. The plaintiff L. J. Decker is the duly appointed, qualified and acting administrator of the estate of Martin Haley, deceased. Said Martin Haley was, at the time of his death, one of the heirs at law and next of kin of said James Haley.''

The complaint further avers that Decker is also the administrator of the estate of Peter Haley, deceased, another heir at law of James Haley, deceased.

The judgment attacked by this appeal granted the relief sought; it affected 79/90 of the money received by the defendants from the deceased's estate.

The first assignment of error challenges an order which overruled a motion submitted by the defendants to strike from the complaint the names of eight of the nine plaintiffs. The motion gave the following as its reason: ''Said complaint or petition is not verified by any one of said parties'' (meaning the eight). Had the motion been allowed, Allen Haley, who verified the complaint, would have remained as the only plaintiff.

The second assignment of error, which for the sake of convenience we shall consider, in part, concurrently with the first, is based upon an order which overruled the defendants' demurrer. The latter was predicated upon the following grounds: (a) Decker, as administrator of the estates of Martin Haley and of Peter Haley, lacked ''legal capacity to sue''; (b) ''Defect of parties plaintiff''; (c) ''several causes of action have been improperly united, to wit, the cause of action of each one of the plaintiffs with one another and the said administrator of two separate estates with different interests and with other plaintiffs''; (d) ''the plaintiffs have not nor has any one of them legal capacity to sue inasmuch as the plaintiffs, respectively, have not filed a verified petition.''

■■ The defendants contend that § 21-113, O. C. L. A., which is a part of our laws governing escheats, requires each plaintiff in a proceeding of this kind to verify the complaint. In fact, they contend that even if several parties are united in interest in a claim of this type, and even if there is no conflict between their several demands, they can not unite in a single action, but each must file his separate complaint. Possibly, § 21-113, upon hasty reading, may lend a little encouragement to those contentions. For instance, it continuously employs the singular in speaking of the party who may institute the action; the name which it employs for him is "the petitioner." It never uses the plural "petitioners." However, it is well established that if it becomes necessary, in order to give effect to the legislative intent, to convert words into the plural or the singular, as the case may be, the courts are authorized to do so. Therefore, unless there is some reason to disregard this rule in construing this statute, it ought to be applied. Certainly, no reason has been pointed out by the defendants for the disregard of this rule, and we know of none.

■ The defendants believe that § 21-113 undertakes to set forth the entire course of procedure which must be followed in proceedings of this kind, and, so believing, make the above-mentioned contention that each plaintiff must verify the complaint.

We do not believe that § 21-113, O. C. L. A., is primarily concerned with the procedure to be followed in proceedings of this character. If that section, pursuant to the defendants' interpretation, should be deemed a complete statement of the permissible procedure, then the defendants' motion, demurrer and, in fact, their appeal, are without warrant, for that section of our laws does not mention—let alone authorize—

motions, demurrers and appeals of this kind. Section 21-113, in our opinion, is a consent statute—it grants the state's consent to be made a party defendant in actions of this kind. One who is an heir at law, within the purview of our Statutes of Descent and Distribution, of a decedent whose estate is held by the state as an escheat would be in a position to maintain an action against the state for the property if the state were suable. When this action was instituted, the ordinary rules of pleading, practice and evidence would outline the procedure to be followed. But the state can not be made a defendant without its consent. The constitution or a statute must yield the state's consent, otherwise the state can not be made a defendant. Section 21-113 serves the purpose just mentioned; it grants the needed consent. But, since the state was not compelled to grant its consent, it was in a position to exact conditions of and impose terms upon those in whose favor it yielded the needed consent. Exercising those privileges, § 21-113 states the circumstances under which an heir may recover an estate in the possession of the state land board, the time within which he must begin his action, and the manner in which he must serve the state with notice of the fact that he has commenced an action. We are satisfied that § 21-113 is a consent statute. The few instances in which items of procedure are prescribed in the act obviously were prompted by a legislative belief that in those specific instances a course different from the usual one was desirable. Wherever those passages exact a course of practice different from the usual, their demands must, of course, be followed. In all other instances the common rules which govern pleading, practice and evidence in actions for the recovery of property must be followed. It is apparent that this act does not create

a new right or a new cause of action. Being a consent statute, the right which may be prosecuted through the privilege which it confers already exists. It merely enables a purported heir to sue the state for the recovery of property which he claims he owns by virtue of our Statutes of Descent and Distribution.

■■■ The contention that our procedure did not permit the joinder of the claims made in this complaint, we deem unworthy of extended consideration. A "defect of parties" means too few, not too many. *Cohen v. Ottenheimer*, 13 Or. 220, 10 P. 20. Nor can a defendant accomplish virtually the same result by moving to strike from the complaint the averments which set forth the claims of the plaintiffs which he disfavors. *State ex rel. v. Duniway*, 63 Or. 555, 128 P. 853. Section 1-315, O. C. L. A., says:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others or by saving their rights * * * ."

We know of no reason why that statute was not applicable to the contention submitted by the motion. It is the common practice in this state for parties who have an interest in the subject-matter of the litigation and in obtaining the relief demanded, to join together as plaintiffs in a single complaint. That has been especially the practice in the prosecution of claims of the kind now before us: *Fenstermacher v. State*, 19 Or. 504, 25 P. 142; *Young v. State*, 36 Or. 417, 59 P. 812, 60 P. 711, 47 L. R. A. 548; *Engle v. State Land Board* 164 Or. 109, 99 P. (2d) 1018; and *Wood v. Sprague*, 165 Or. 122, 106 P. (2d) 287. This practice conserves the time of the court, or the parties and of the witnesses. It minimizes costs. It should be encouraged. There is nothing in our code of pleading nor in § 21-113

which forbids that practice. Therefore, it was not necessary for the plaintiffs to file more than one complaint.

■ Section 1-802, which permits verification of a pleading by one of the parties to it, if he and his co-parties are united in it, rendered it unnecessary for more than one of the plaintiffs to verify the complaint.

Although the motion gave the following as the reason upon which it was based: "Said complaint or petition is not verified by any one of said parties," the defendants now seek to supplement that reason by pointing out that the verification was made by Allen Haley in the state of Washington before a notary public of that state, and that the notary's appointment to that office was not certified by any official of Washington. Since that objection was not mentioned in the motion and was postponed until the cause reached this court, we would be justified in deeming that its tardy presentation was a waiver of it. But we shall determine its merits. The verification and the notary's subscription follow:

"State of Washington)
 County of Kittitas  ) ss.

I, Allen Haley, being first duly sworn, depose and say that I am one of the plaintiffs-petitioners in the within entitled cause, and that the foregoing complaint is true as I verily believe.

(Signed) Allen Haley.

Subscribed and sworn to before me this 25th day of March, 1938.

(Signed) F. A. Kern
Notary Public for State of
Washington Residing at
Ellensburg.
My commission expires
Oct. 27, 1939."

Section 4-106, O. C. L. A., says:

"An affidavit or deposition taken in another state of the United States, * * * otherwise than upon commission, must be authenticated as follows before it can be used in this state:

1. * * *

2. Or must be certified by a judge of the court, having a clerk and a seal, to have been taken and subscribed before him at a time and place specified, and the existence of the court, the fact that such judge is a member thereof, and the genuineness of his signature shall be certified by the clerk under the seal thereof:

3. Or such affidavit or deposition may be made and certified before a notary public having a seal, and acting as such by authority of any state or territory of the United States or the District of Columbia, and said seal shall be affixed to said affidavit or deposition together with the date of the expiration of the notarial commission."

It will be observed that although subdivision 2 of the section from which we have just quoted requires that if an affidavit or deposition is taken before a judicial officer having a clerk and a seal, the existence of his court, his right to his office and the genuineness of his signature must be established by the certificate of his clerk, yet no similar requirement is made in the next subdivision of the section which speaks of affidavits and depositions taken before notaries public. It may, therefore, be fairly assumed that if the legislature had felt that something in addition to the notary's seal and a notation showing the date of the expiration of his notarial commission was necessary in order to manifest his authority, it would have so said.

■ Section 2-503, O. C. L. A., authorizes the courts of this state to take judicial notice of the statutes and laws of every state. Exercising the power thus conferred,

we observe that § 9902, subd. 3, Remington's Rev. Stat. of Washington, authorizes the notaries public of that state to take oaths to depositions and affidavits.

Section 2-502, O. C. L. A., which is another part of the laws of this state which define the scope of judicial notice, says:

"The following facts are assumed to be thus known * * * 7. The seals of courts of admiralty and maritime jurisdiction, and of notaries public * * * ."

Even in the absence of legislation of the character just mentioned, courts have taken judicial notice of the seals of notaries public. Mr. Justice Field, in *Pierce v. Indseth,* 106 U. S. 546, 1 S. Ct. 418, 27 L. Ed. 254, said:

"The certificate of the protest of the bill of exchange by the notary in Norway was properly received in evidence. It is in due form, and bears what purports to be the seal of the notary. * * * Besides the court will take judicial notice of the seals of notaries public, for their office is recognized by the commercial law of the world. We thus recognize the seal of the document in question as that of the notary in Norway, and as such authenticating the certificate of protest and entitling it to full faith and credit."

In *Wood v. St. Paul City Railway Co.,* 42 Minn. 411, 44 N. W. 308, 7 L. R. A. 149, Mr. Justice Mitchell, in language worthy of quotation, said:

"* * * We think these affidavits may be made in another state, before any officer authorized by the laws of such state to administer oaths. Of course, if taken in another state, they must be duly authenticated, so as to show on their face the official character of the officer, as well as his authority to administer oaths. In each of the present cases the affidavit was sworn to in Pennsylvania before a notary public of that state, who authenticated it by signing the jurat, and affixing his notarial seal. * * * A public notary is considered, not

merely an officer of the country where he is admitted or appointed, but as a kind of international officer, whose official acts, performed in the state for which he is appointed, are recognized as authoritative the world over. Defendant's counsel concedes that this is true as to all his acts in the way of the authentication of what he terms commercial documents, but insists that, outside of such matters, a notary has no power, in the absence of statutory authority, to administer oaths. Although this is sometimes stated in the books as being the law, yet its correctness may well be doubted. The powers of a notary, which is a very ancient office, are largely founded on customary law. The English notaries have always considered themselves authorized to administer oaths, and whatever chance for doubt about it there might have been, was set at rest by the act of 5 & 6 Wm. IV. c. 62, sec. 15; Brooke, Not. 20. Affidavits taken before notaries in foreign countries have uniformly been received by the courts of England in judicial proceedings without any other proof of their official character or their authority to administer oaths than their notarial seals. * * * As a matter of fact, in every state and territory in the Union notaries have power to administer oaths, and for the last 40 years affidavits sworn to before a notary in any state of the Union, and authenticated by his notarial seal, have been admissible in all the federal courts, without any proof of their authority to administer oaths. It is true that perhaps in every state the powers of notaries, including that of administering oaths, have been regulated by statutes, which, however, are largely declaratory in their nature. But whether this authority be of statutory origin, or founded on customary law, the recognition of its existence has become so general, if not universal, that there is now no good reason why it should not be judicially recognized as one of the general powers of notaries, and affidavits authenticated by seals of notaries of other states placed on precisely the same footing as their certificates of protest or authentications of so-called commercial documents.''

Idaho has a statute which is the exact counterpart of section 2-502, O. C. L. A., already mentioned. In *Dahlstrom v. Walker*, 33 Idaho 374, 194 P. 847, the court held that by virtue of that statute and the resulting judicial knowledge, an affidavit made in another state before a notary public required no other authentication than the notary's signature and seal.

■ It is our opinion that the verification was sufficiently authenticated when the Washington notary included within his subscription his signature, seal and a notation indicating the date of the expiration of his notarial commission. We, therefore, believe that the motion was properly overruled.

■ We shall now consider the demurrer. L. J. Decker, according to the complaint, was appointed administrator of the estate of Martin Haley, who died August 22, 1935, and that individual, according to further allegations of the complaint, was a brother of James Haley, the decedent with whose estate we are concerned. Decker, so the complaint further alleges, was also appointed administrator of the estate of Peter Haley, who died March 29, 1937. Peter was a brother of James. Section 21-113, O. C. L. A., says:

"Within ten years after judgment * * * a person not a party or privy to such proceedings nor having actual knowledge of the making of such judgment or order or of such payment to the state treasurer, may file a verified petition in the circuit court * * * showing his claim or right to the property escheated or the proceeds thereof. * * * Such petition shall be verified by the oath of the petitioner. * * * it shall also state * * * that said petitioner claims said property or proceeds as the heir or next of kin, setting forth the relationship of the decedent * * * ."

Decker, of course, could not make the averment required by the portion of the statute last quoted. He

does not claim that he was an heir or next of kin to James Haley. The best that he could do was to state that he was the administrator of a deceased heir's estate. It is clear that the statute under consideration granted no authority to Decker to maintain the actions which he undertakes to prosecute: *Engle v. State Land Board of Oregon*, supra. In that decision Mr. Chief Justice KELLY, speaking of circumstances exactly like those before us, said:

"The instant case was not instituted by anyone among the class of persons to whom the state's consent to be thus sued has been granted."

The demurrer should have been sustained to the causes of action presented by Decker.

■ The other three bases upon which the demurrer is predicated received attention while we were disposing of the motion. For the reasons already stated, they possess, in our opinion, no merit. Although the above were the grounds stated in the demurrer as the premises upon which it was based, the major part of the defendants' brief is given over to an argument that § 21-113 conflicts with Article VIII, § 2, Constitution of Oregon, which says:

" * * * all the moneys and clear proceeds of all property which may accrue to the state by escheat * * * shall be set apart as a separate and irreducible fund, to be called the common school fund * * * ."

The defendants argue that § 21-113 permits a reduction of the school fund. But it will be recalled that the section of our laws just mentioned is a consent statute, not an appropriation bill. It appropriates nothing; of itself it can take nothing out of the fund. It merely permits a person who claims that he is a beneficiary of our Statutes of Descent and Distribution, and as such

entitled to property held by the state, to begin an action against the latter for the purpose of establishing the merits of his claim. We said that it permits him to begin an action; the words of the section are that he "may file a verified petition * * * showing his claim or right to the property * * * ." The word "petition" and the word "petitioner" by which the section refers to the purported heir have more of the flavor of probate proceedings than of law actions, and were possibly chosen in order to indicate that the probate proceeding, which was closed with the escheat order, is in effect held open for ten years in order to give the heirs, if any, an opportunity to present themselves and obtain a judgment order in cancellation of the escheat order. If the facts are as the claimant contends, then it necessarily follows that the state never owned the item of property which he seeks. That is true because when there is an heir, there can be no lawful escheat. And if the claimant, and not the state, owned the property, the latter was never a part of the common school fund. Since property owned by others, whoever they may be, can not be legally a part of the common school fund, the latter is not reduced when the property is yielded up.

But the defendants argue that the state's right to the fund was judicially established when at the end of the probate proceedings the order of escheat was made. They contend that that order was a final judgment and that, since no appeal was taken from it, it was and is the measure of the rights of all persons to the fund. Having taken that position, the defendants argue that the common school fund will be reduced in violation of the above-mentioned constitutional provision if the defendants are compelled to pay to the plaintiffs the amount of their judgment. Whatever might be the merits of

that contention were it not for 1937 session laws, chapter 217, (§ 21-113, O. C. L. A.), it is clear that the enactment just mentioned leaves no room for the contention. Section 21-113 attaches to escheat orders what might be termed a ten year condition subsequent; that is, in that limitation period the state's right to the fund may be ended by a judgment entered in favor of an heir or next of kin of the decedent. Such a judgment terminates the rights conferred by the escheat order, or, stated otherwise, it, in effect, revokes the escheat order. Therefore, since the act under review appropriates nothing out of the fund and does not contemplate that anything rightfully in the fund be taken from it, it is clear that the act is not subject to the criticism made of it by the defendants.

■ Section 21-113 says, in part:

"If the real property or amount sought to be re-covered under the provisions of this section shall not exceed in value the sum of $250, said petitioner may file said petition in duplicate with the state land board. If said board is convinced thereby, and by such other proof as said board shall require, that the petitioner is entitled to the property or amount claimed, said board may reconvey such real property or pay the amount of said claim by warrant upon the state treasurer."

The defendants argue that those of the plaintiffs whose claims do not exceed $250 should have presented them to the state land board and that they had no right to join in the complaint. It will be observed, however, that the procedure authorized by the provision just quoted is permissive, not mandatory. Preceding parts of the section, which provide for an action against the board, are all-inclusive. Therefore, the remedy which they offer was available to all of the claimants.

The third, being the last, assignment of error follows: "Error of the Court in rendering and entering judgment herein." Nothing is said by the defendants in support of that assignment of error which has not been considered in preceding paragraphs of this opinion.

It follows from the above that the circuit court erred when it granted judgment in favor of the plaintiff, L. J. Decker, as administrator of the estate of Martin Haley, deceased, for one-sixth of the fund, and entered a further judgment in favor of the same plaintiff, this time as administrator of the estate of Peter Haley, deceased, for another one-sixth of the fund. In all other details the judgment of the circuit court is without error. The cause is remanded to that court with instructions to enter the proper judgment.

KELLY, C. J., and RAND and LUSK, JJ., concur.