Argued October 27, affirmed December 3, 1958

ROGERS *v.* HOLMES ET AL

332 P. 2d 608

*Marbeth A. Miller,* Washington, D. C., argued the cause for appellant. With her on the brief were Dallas S. Townsend, Assistant Attorney General, Director, Office of Alien Property, Washington, D. C., C. E. Luckey, United States Attorney for the District of Oregon, Portland, Victor E. Harr, Assistant United

States Attorney, Portland, George B. Searls, Washington, D. C., and Irwin A. Seibel, Washington, D. C.

*Catherine Zorn,* Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and WARNER, McALLISTER, SLOAN and O'CONNELL, Justices.

WARNER, J.

This is an appeal by William P. Rogers, Attorney General of the United States, as successor to the Alien Property Custodian, hereinafter called "the Custodian," in a proceeding brought pursuant to ORS 120.130 to recover property which escheated to the State Land Board from the estate of Albert Reichel.

The defendants, Robert D. Holmes, Mark O. Hatfield and Sigfrid Unander, respectively, Governor, Secretary of State and State Treasurer of the State of Oregon, together constitute the State Land Board of this state. We will hereinafter refer to them as "the State."

The powers and duties of the Attorney General of the United States as Alien Property Custodian are derived from the Trading with the Enemy Act, 50 USC App, § 1 et seq. (50 USCA).

The State demurred to the Custodian's amended petition on two grounds: want of legal capacity in the Custodian to sue and failure of the petition to state sufficient facts to constitute a cause of action. From an order sustaining the demurrer and the ensuing judgment, the Custodian appeals.

Proceedings were had in the estate on the petition of the State for an order of escheat, resulting in an

order on June 19, 1948, finding no heirs and directing distribution of the property of the decedent to the State, whereupon title thereto vested in the state of Oregon as of May 28, 1944, the date of Reichel's death. *In Re Ohlsen's Estate,* 158 Or 197, 200, 75 P2d 6; ORS 120.010. Thereafter, in October, 1948, decedent's administratrix paid the remaining funds to the State Land Board, being the residue of the personal property and proceeds resulting from sale of real property during the probate. The Custodian filed an answer to the State's petition for an order of escheat, but no appeal was taken by the Custodian from the escheat order which followed.

After the escheat order and the distribution made to the State, the Custodian apparently learned that the decedent had had a sister named Hedwig Schreiber, who lived in Germany and died prior to the death of her brother. She left surviving her five children, nieces and nephews of Albert Reichel. All of these persons, if, in fact, they were his heirs, were aliens at the time of their uncle's death. Armed with this information, the Custodian, in June, 1950, two years after the decedent's estate had escheated to and vested in the Land Board, issued his Vesting Order No. 14715, vesting the purported interests of said nieces and nephews, as the sole heirs at law of Albert Reichel.

We pause to observe that the petition of the Custodian is verified by an Assistant U. S. Attorney for the District of Oregon instead of the heirs. We also note that it does not inform us that the alleged heirs of Reichel were German aliens at the time of decedent's death, nor do we find therein the ages and places of residence of the heirs, nor that all or any of them were residents of Germany at that time. Such statements in the petition are required by ORS 120.130, infra.

It is upon the Vesting Order, made in 1950, that the Custodian rests his claim of right to proceed in this matter.

The basic question presented by the appeal is whether the right of the heirs to petition for a recovery of the escheated property vested in the Custodian by his order of June, 1950, so as to entitle him to enforce recovery under ORS 120.130. That section provides:

"(1) Within 10 years after judgment in any proceeding in the circuit court escheating real property to the state, or after the order of the court having probate jurisdiction directing the conveyance of escheated real property to the state, and in all other cases within 10 years after payment of the proceeds of escheated personal property to the State Land Board, a person not a party or privy to such proceeding, nor having actual knowledge of the making of such judgment or order or of such payment to the State Land Board, may file a verified petition in the circuit court of the county where such information was filed, showing his claim or right to the property escheated or the proceeds thereof.

"(2) Such petition shall be verified by the oath of the petitioner and state:

"(a) The petitioner's age and place of residence;

"(b) That the petitioner lawfully is entitled to such property or proceeds, briefly describing the same;

"(c) That at the time the property escheated to the state the petitioner had no knowledge or notice thereof;

"(d) That the petitioner claims the property or proceeds as the heir or next of kin, setting forth the relationship of the decedent, who at the time of his death was the owner of same; and

"(e) That 10 years have not elapsed since the

making of the judgment or order escheating the property to the state, or since the payment of the proceeds of the escheated estate by the administrator thereof to the State Land Board pursuant to the order of the court having probate jurisdiction."

That a sovereign state cannot be sued without its consent is a cardinal principle of law so well established as to require no citation. The procedure established by ORS 120.130, supra, constitutes such a legislative consent. But being, as it is, in derogation of the state's sovereignty, the statute must be given a strict construciton. *Engle v. State Land Board,* 164 Or 109, 115, 99 P2d 1018; *Wood v. Sprague,* 165 Or 122, 125, 106 P2d 287; *Haley v. Sprague,* 166 Or 320, 325, 111 P2d 1031; *Peters v. McKay,* 195 Or 412, 439, 238 P2d 225, 246 P2d 585. These cases all involve claims arising under ORS 120.130, supra.

This court has repeatedly held that recovery under the provisions of the foregoing statute can be enforced only by the persons to whom consent has been given and that: "The legal title of the state to escheated property can be divested only in the mode and by the persons designated by law." *Engle v. State Land Board,* supra (164 Or at 114). The court stated in Engle: "These requisites specified in the statute granting the cause of action to an heir or next of kin, by their express provisions dispel, dissipate and refute the suggestion that the authorized special proceeding to recover escheated funds may be maintained by an administratrix." (164 Or at 116) See, also, *Wood v. Sprague,* supra (165 Or at 131), and *Peters v. McKay,* supra (195 Or at 412), where the holding in the Engle case is followed.

In *Cummings v. Deutsche Bank,* 300 US 115, 120, 81 L ed 545, 57 S Ct 359 (1937), Mr. Justice Butler,

speaking for the court, declares the impact of a vesting order in these words:

"* * * Alien enemy owners were divested of every right in respect of the money and property seized and held by the Custodian under the Trading with the Enemy Act. *United States v. Chemical Foundation,* 272 U. S. 1, 9-11. *Woodson v. Deutsche, etc. Vormals,* 292 U. S. 449, 454. The title acquired by the United States was absolute and unaffected by definition of duties or limitations upon the power of the Custodian or the Treasurer of the United States. Congress reserved to itself freedom at any time to dispose of the property as deemed expedient and right under circumstances that might arise during and after the war. * * *"

One author refers to the incidental results of "vesting" as a "sort of statutory transubstantiation * * *." 62 Harv L Rev 721, 739.

■ Thus, we find that the Custodian stands before us not as an heir nor as a representative of an enemy heir or an assignee or transferee, but as an owner of whatever interest, if any, of the heirs as they may have had in June, 1950, and as was encompassed by the vesting order and as one holding such title, if any, for the use and benefit of the United States without any present or future duty or obligation to the heirs of the decedent, Reichel, and without any beneficial interest remaining in them. *United States v. Borax Consol. Ltm'd.,* 62 F Sup 220, 221 (1945).

■ The Custodian, of course, obtains by the vesting order no greater title or interest than had the alien at the time of seizure. *Farmers' Loan & Trust Co. v. Miller* (SD NY) 2 F2d 493. In *McGrath v. Dravo Corporation,* 183 F2d 709 (3rd Cir), the court, at p 713, speaks of the Custodian as standing in the

alien's shoes. See, also, *Zittman v. McGrath,* 341 US 446, 463, 95 L ed 1096, 71 S Ct 832.

What was the nature of the "right, title and interest" which was the subject of the putative capture by the Custodian under his vesting order of June, 1950? In *Engle v. State Land Board,* supra (164 Or at 112), this court declared: "The provisions of the statute [ORS 120.130, supra] \* \* \* plainly indicate that the right there given to institute a proceeding to recover escheated property is one that cannot be assigned."

In *Peters v. McKay,* supra (195 Or at 466), this concept was expanded in words which leave no question that the Custodian here enjoys no standing under that statute in question, lacking, as he does, the requisite capacity to sue. There, we said, speaking through Mr. Justice BRAND:

"Under these decisions, it is clear that OCLA § 21-113 as amended [ORS 120.130], must be treated as *a consent statute, the terms and conditions of which must be fully complied with, and that the right which is created by the statute is personal* to the heirs and next of kin of the deceased and *can be enforced by no other person,* not even by the administrator of an heir. It follows that the *claims* of the heirs *were not capable of being 'encumbered, pledged, transferred or sold or the like' and they were therefore never vested* in the State of The Netherlands by virtue of the Royal Decree or otherwise. \* \* \* Since the claims can be enforced in this state only by the heirs, and upon a petition verified by an heir, and since the heir must, by such petition, show his claim of right as an heir, it follows that the claim of the plaintiffs, under our statute, to recover an escheat, was neither within the letter nor the intent of the Royal Decree \* \* \*. *An assignment by the Dutch heirs, either*

to the Royal Netherlands government, or *voluntarily* to a third party, or *involuntarily* to a German enemy, *would have carried with it no right enforceable in this state under our statute.*" (Emphasis ours.)

■ There is a distinction between "property rights" and a "privilege" granted by a statute to sue the sovereign. Nowhere is it more sharply evident than under a statute consenting to the possible recovery of property escheated to the State by limiting the privilege to persons of a particular class as in ORS 120.130, supra. As described, limited and conditioned by the words of Mr. Justice BRAND, in *Peters v. McKay,* supra, the right to sue the State conferred upon decedent's heirs and next of kin by the subject statute, is a personal privilege; that is, a right peculiar to the person on whom it is conferred and not to be exercised by another or others, having value only to the heirs but which evaporates when sought to be employed by strangers to that act. *Smith v. Cornell University,* 45 NYS 640, 643; 72 CJS 952, Privilege. But even as to a nonresident alien heir this naked privilege under ORS 111.070 is not transmuted into one of substance or value to and until the heir has hurdled the protective barriers of that particular code section.

From *Lynch v. United States,* 292 US 571, 78 L ed 1434, 54 S Ct 840, we learn that the character which we ascribe to the heir's privilege under ORS 120.130 is likewise so accorded by the federal courts. At page 581 it is said: "For consent to sue the United States is a privilege accorded; not the grant of a property right. * * *" Moreover, that section of our code creates a cause of action that does not survive unless so declared. *Engle v. State Land Board,* supra (164

Or at 112), "and when a state does abdicate this attribute of sovereignty, and permits itself to be sued, the citizen who benefits by such an act of grace acquires *no vested right* thereby, but *simply a privilege* voluntarily granted by the state, which may be hedged about with terms and conditions, and may be withdrawn as freely as it was given." (Emphasis ours.) *Re Hoople's Estate,* 179 NY 308, 72 NE 229, 230. To so limit the scope is consonant with the very nature of a statute of consent, for, as the court has said, the consent of the state "is of grace, and the same power which granted it can prescribe such conditions to its exercise as it sees fit and can wholly withdraw it." *Wood v. Sprague,* supra (165 Or at 134); *Engle v. State Land Board,* supra (164 Or at 115). See, also, *State v. Pulos,* 64 Or 92, 95, 129 P 128; 81 CJS 1310, States § 215(b); 49 Am Jur 315, States, etc. § 98. The terms and conditions prescribed in a consent statute are jurisdictional facts, and must be fully complied with. *Engle v. State Land Board,* supra (164 Or at 115); 3 Sutherland Statutory Construction (3d ed) 188 § 6301; 81 CJS, supra, 1308 § 215(b).

■ Although the Custodian stands in the shoes of the heirs, as said by the Supreme Court in *Cummings v. Deutsche Bank,* supra (300 US 115), that position prevails only when there has been a vesting of a substantial property right. But when the Custodian acquires no interest in the escheated property through the vesting order because the heirs had none to reach and the State's consent to pursue it, granted by the statute, as we have seen, is not a property right but only one of personal privilege, then that otherwise apt figure of speech employed in the Cummings case has no applicability. To the contrary in this matter, it may be said that the Custodian not only does not enjoy the

benefit of "the shoes of the heirs," but without them has no standing here and no support for the claims he makes in this forum.

■ One further question remains for consideration: Does the federal Trading with the Enemy Act confer on the Custodian special rights and preferences overriding state statutes relating to probate, escheat and the granting of consent to initiate proceedings to recover escheated property? We think not. *Clark v. Allen*, 331 US 503, 91 L ed 1633, 67 S Ct 1431, 170 ALR 953, 965; *In Re Thramm's Estate*, 80 Cal App2d 756, 183 P2d 97, 103; *United States v. Board of Finance and Revenue*, 369 Pa 386, 85 A2d 156 (1952); *In re Estate of Krachler*, 199 Or 448, 263 P2d 769; *Gorny v. Milwaukee County Orphans Board*, 93 F2d 107, 115 ALR 1000; *Pfleuger v. United States*, 121 F2d 732.

*United States v. Board of Finance and Revenue*, supra, is a decision of special interest and pertinency. In that case, the Attorney General of the United States, in his capacity as Custodian, sought to recover unclaimed moneys derived from a decedent's estate as funds accruing to heirs residing in Germany and later paid into the State Treasury of the Commonwealth of Pennsylvania, pending their limited opportunity to reclaim them. The Custodian urged that the Trading with the Enemy Act superseded the law of the Commonwealth governing the recovery of such property. The court, however, repudiated that contention and referred to Art XI of the Amendments to the Constitution in these words:

> "Among these rights and powers thus reserved to the states perhaps none had earlier recognition nor none so well established as that of the field of inheritance law. The U. S. Supreme Court has consistently recognized the several states' right

to determine how property, real or personal within its confines shall be permitted to be transmitted by descent or will. * . * * Recent adherence to this doctrine may also be found in the escheat cases [citing authorities]." (at p 161 of 85 A2d)

It also stated that the right to sue for the recovery of funds in the possession of the state depended upon the terms of the statute granting the state's consent to sue, and that when the United States entered the state court for such purpose, it divested itself of sovereignty and enjoyed no superior rights. This declaration is found at page 163 (85 A2d, supra):

"* * * *the United States may not sue the Commonwealth in the state courts* without the Commonwealth's consent. This is true and follows from the doctrine of sovereign immunity: * * *

"A sovereign can be sued only in the way of his own appointment and may prescribe any mode he pleases: Fitler v. Commonwealth, 1850, 31 Pa. 406, 408. And only in that way: [citing authorities]. *The right to sue this Commonwealth depends then upon the statute giving consent.* Such consent is given by the Commonwealth as to moneys paid into the State Treasury without escheat by either or both provisions in two acts, * * *.

"The right to recover funds from the State Treasury by both acts is expressly conditioned as to the proof required before any money can be paid out. These conditions must be met or the suit cannot be maintained. [authority cited] *The United States or the Alien Property Custodian, if they seek to come into the state courts under these acts must meet the same conditions as any private party. The United States, when it comes into the state courts, divests itself of its sovereignty and has no superior rights:* [citing authorities]." (Emphasis ours.)

The holding in *Gorny v. Milwaukee County Orphans Board,* supra, is to the same effect. There, the court says at page 1004 (ALR):

"It therefore seems apparent that an heir can have no greater or different right in escheated property than provided by the laws of the state. It [refund of escheated property] is peculiarly a matter within its sovereign power, unknown to the common law, *and one over which the Federal government has no jurisdiction* or control. Likewise, any right of refund can only exist by grace of the state, and if provided for is allowable only in conformity with its laws, both as to the manner and time of making such claims. * * *"

The same jealous regard for the necessary protection of sovereign immunity manifest by the federal courts as to the national government is no less important and equally applicable for the protection of the sovereignty of the several states. Exemplifying the federal zeal in this area is the following statement from *Lynch v. United States,* supra (292 US at 582):

"* * * The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, * * * and to those arising from some violation of rights conferred upon the citizen by the Constitution. * * * For immunity from suit is an attribute of sovereignty which may not be bartered away."

Affirmed.