# ASSOCIATED AGENTS, INC.,
### *Petitioner,*

*v.*

# DEPARTMENT OF INSURANCE AND FINANCE,
### *Respondent.*

## (CA A66364)

813 P2d 1089

Michael McGrady, Eugene, argued the cause and filed the brief for petitioner.

Jerome Lidz, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Associated Agents, Inc. (petitioner) challenges the validity of OAR 836-52-156, adopted by the Director of the Department of Insurance and Finance (Director) on May 11, 1990. The rule provides for a "leveling" of commissions and other compensation that insurers may pay agents for the sale of Medicare supplemental policies.[1] The effect of the rule is to reduce the first year's commission and spread it over a period of not less than seven years. We hold the rule valid. *See* ORS 183.400.

Petitioner makes no procedural challenge to the promulgation of the rule. Its first argument is that the rule exceeds the Director's statutory authority. Petitioner's argument in its brief is based on ORS 183.337, the procedure for an agency's adoption of federal rules. That statute is inapplicable here. In its answering brief, the Director identified the relevant statutes and so, at oral argument, petitioner presented a new argument. As we understand its position, it is now contending that OAR 836-52-156 regulates *new* Medicare supplemental policies but, under ORS 743.010(1)(c) and ORS 743.013(3), the Director's authority for promulgating rules concerning Medicare supplements is limited to *replacement* policies.

---

[1] OAR 836-52-156 provides:

"(1) An insurer or other entity may provide commission or other compensation to an agent or other representative for the sale of a Medicare supplement policy or certificate only if the first year commission or other first year compensation, including overrides and other sales-connected remuneration to field supervisory personnel, does not exceed 200 percent of the commission or the compensation paid for selling or servicing the policy or certificate in the second year or period.

"(2) The commission or other compensation provided in subsequent renewal years must be the same as that provided in the second year or period and must be provided for a reasonable number of renewal years. The total number of renewal years shall not be fewer than seven renewal years.

"(3) An entity shall not provide compensation to its agents or other producers and an agent or producer shall not receive compensation greater than the renewal compensation payable by the replacing insurer if an existing policy or certificate is replaced.

"(4) For purposes of this rule, 'compensation' includes pecuniary or non-pecuniary remuneration of any kind relating to the sale or renewal of the policy or certificate, including but not limited to bonuses, gifts, prizes, awards and finder's fees.

"(5) Violation of this rule is an unfair trade practice under ORS 746.240."

■      ORS 731.244 grants the Director broad authority to "make reasonable rules necessary for or as an aid to the effectuation of the Insurance Code." In adopting OAR 836-52-156, the Director explained that the rule was necessary in order to eliminate the practice whereby large commissions are paid to agents for the first year of supplemental policy coverage. That form of payment sometimes results in agents' encouraging senior citizens to replace existing policies simply to generate commissions, a practice known as "rolling." The Director found "rolling" to be unfair and deceptive under ORS 746.240:

> "No person shall engage in this state in any trade practice that, although not expressly defined and prohibited in the Insurance Code, is found by the director to be an unfair or deceptive act or practice in the transaction of insurance that is injurious to the insurance-buying public."

The Director was free to adopt the rule to further the aim of the Insurance Code to prohibit deceptive practices in insurance transactions.

■      Furthermore, by regulating commissions for new policies, the rule removes an incentive for the sale of unwarranted replacement policies. It aids in accomplishing the statutory directive of ORS 743.010(1)(c) that the Director "[e]stablish * * * requirements intended to discourage * * * replacement, without regard to the advantage to policyholders, of existing policies by new policies." In the same way, the rule aids in meeting the requirement for adoption of rules for nonduplication and replacement of Medicare supplemental policies. ORS 743.013(3). We conclude that the Director did not exceed his statutory authority in adopting OAR 836-52-156.

■      We turn to petitioner's constitutional challenges to the validity of the rule. To begin, petitioner argues that the rule violates Article I, section 20, of the Oregon Constitution.[2] It contends that OAR 836-52-156 treats similarly situated agents differently, because agents who do not sell Medicare supplemental insurance are not subject to the same

---

[2] At oral argument, petitioner conceded that the rule does not violate federal due process standards.

"Procrustean strictures of their income." Section 20 prohibits granting privileges that are not available to all on equal terms. *Atlantic Richfield Co. v. Greene,* 100 Or App 16, 19, 784 P2d 442 (1989), *rev den* 309 Or 698 (1990). There is no constitutional violation just because regulations apply to some kinds of insurance and not to others. Agents are free to sell Medicare supplemental policies or not. If they choose to do so, they subject themselves to the applicable regulations. *See Atlantic Richfield Co. v. Greene, supra,* 100 Or App at 20. Petitioner has not identified a class that exists by virtue of social or personal characteristics to which OAR 836-52-156 grants or denies a privilege or immunity that is not applicable to all on equal terms. *See Hale v. Port of Portland,* 308 Or 508, 525, 783 P2d 506 (1989). There is no section 20 violation.

■ Petitioner next argues that the Commerce Clause, Article I, section 8, of the United States Constitution, is violated, because the rule has "thrown out the baby and kept the bath water" by regulating scrupulous agents as well as unscrupulous ones. That argument fails to identify any economic impact on interstate commerce, much less one that constitutes a violation of the Commerce Clause. We reject it.[3]

■ Finally, petitioner challenges the rule as impairing contracts between agents and insurance companies. United States Const, Art I, § 10. Even assuming that the rule effects a change in existing contractual arrangements, there is no constitutional violation. The rule adjusts the form of compensation by spreading it out more evenly over time; it does not deny compensation. In the light of the need for the rule identified by the Director, any alteration of the parties' rights and responsibilities is appropriate to the public purpose of the regulation. *Kilpatrick v. Snow Mountain Pine Co.,* 105 Or App 240, 805 P2d 137, *rev den* 311 Or 426 (1991). We deny petitioner's motions for an evidentiary hearing.

Rule held valid; motion for evidentiary hearing denied.

---

[3] Petitioner's argument that the rule constitutes a "taking" under the Fifth Amendment of the United States Constitution also fails. It has not identified how regulating the form of payment to agents constitutes a "taking" of anything, much less a "taking" of something for public use.